**EXHIBIT 2**

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

OUYEINC LTD.,
      Plaintiff,

    v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"
      Defendants.

No. 22-cv-05187

Judge Jeremy C. Daniel

## ORDER

Defendant garnisells' motion to vacate default judgment and preliminary injunction [101] is granted. Defendants garnisells' motion for sanctions under Rule 11 and to find this case exceptional [102] is denied. Defendant itsyours4keeps' motion for reconsideration [113] is granted. The Court finds that the judgment is void under Fed. R. Civ. P. 60(b)(4) and relieves defendants garnisells, itsyours4keeps, and clothesforangels from final judgment and from all other orders entered in this case. The plaintiff shall return all money recovered from garnisells, itsyours4keeps, and clothesforangels, notify any third-parties who received notice of the Court's prior orders that this Court has vacated those orders as to these defendants, and shall facilitate the return of the defendants' webstores to the defendants. The deadline to comply with this order is November 7, 2025.

## STATEMENT

Motion to Vacate and Motion to Reconsider

The plaintiff filed a complaint against 228 defendants. (R. 1; R. 4.) Whether the Court should have permitted joinder is another question that, given the present posture of the case, the Court cannot address.

The complaint alleges that the defendants sold counterfeit versions of the plaintiff's product, electric wax melters, which the plaintiff sells under the Pro-Wax 100 trademark. (R. 1 at 5.) The complaint alleges that the defendants "reach out to do business with residents of Illinois" through websites where the defendants offer their products for sale. (*Id.* at 2-3.) The complaint further alleges that residents of Illinois "can purchase" the defendants' products and that defendants offer to ship their products to Illinois, (*Id.* at 3)—but does not allege that Illinois residents have

purchased the defendants' products or that the defendants have shipped their products to Illinois. (*See id., generally.*)

The Court entered a temporary restraining order in which it found, "in the absence adversarial presentation, that it has personal jurisdiction over Defendants because Defendants directly target their business activities toward consumers in the United States, including Illinois. Specifically, Plaintiff has provided a basis to conclude that Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more seller aliases, offer shipping to the United States, including Illinois, and have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Plaintiff Trademarks") to residents of Illinois." (R. 16 at 1.) In support of its motion, the plaintiff submitted a declaration where the declarant stated, "on information and belief, [the defendants] have sold Counterfeit Pro-Wax100 Products to residents of Illinois over the Internet." (R. 10 ¶ 8.) The Court later entered a preliminary injunction. (R. 73.)

The plaintiff subsequently moved for default judgment, (R. 74), which the Court entered. (R. 90.) The Court determined that, "PLAINTIFF has provided a basis to conclude that the Defaulting Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more seller aliases, offer shipping to the United States, including Illinois, and have sold products using infringing and counterfeit versions of PLAINTIFF's federally registered trademarks ("ProWax100 Marks") to residents of Illinois." (*Id.* at 1-2.) In support of its motion for default judgment, the plaintiff claimed, "[e]ach of the Defaulting Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and unlicensed knock-off products, including wax warmer products that use infringing versions of Plaintiff's Pro-Wax100 Marks ("Infringing Pro-Wax100 Products") to consumers in the United States, including the State of Illinois."

The Court entered default judgment on January 3, 2024. A little more than seventeen months later, defendant garnisells filed a motion to vacate the default judgment and the preliminary injunction entered against him. (R. 101.) Garnisells also filed a motion for sanctions under Rule 11. (R. 102.) In its motion to vacate, garnisells argues that the plaintiff failed to serve it. That is not true. The Court authorized alternative service (R. 15) and the plaintiff effected service consistent with that authorization. Whether the Court should have authorized alternative service is another question that, given the present posture of the case, the Court cannot address.

Garnisells also argues that the default judgment is void because the Court lacks personal jurisdiction over it. The Court agrees. As an initial matter, understand that the Court made its prior determinations concerning personal jurisdiction "in the absence of adversarial presentation." Moreover, given the posture of the case at the

2

time, took the plaintiff's asserted facts as true. *See NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022).

Now that a defendant has challenged personal jurisdiction, the Court has occasion to consider it. To that end, the Court instructed the parties to submit any evidence "concerning whether defendants Ara Dermarderosian (garnisells), Maireny Montilla (clothesforangels), or Michelle Padilla (Itsyours4keeps) shipped any of the accused products to Illinois." (R. 132.) The plaintiff has no evidence that any of these defendants, each of whom have in some way challenged the judgment entered against them, shipped any of the accused products to Illinois.

"When a defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), however, 'the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *NBA Props.,* 46 F.4th at 620 (citation omitted). In this case, personal jurisdiction requires "[f]irst, the defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state. Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* at 623. A defendant can purposely direct its activities at the state by establishing an online store, asserting a willingness to ship goods to the state and demonstrating the capacity to do so, and shipping the accused product to the state. *Id.* at 624.

Here, the plaintiff concedes that defendants garnisells, itsyours4keeps, and clothesforangels did not ship their products to Illinois. While the Seventh Circuit cautioned against "drawing a rigid numerical line," it also did not stop at the defendant's "willingness to ship goods to Illinois and [ ] capacity to do so" when determined whether personal jurisdiction existed in *NBA Props. See NBA Props.*, 46 F.4th at 624-25. Rather, it went on to consider that "[w]hen an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated Illinois address." *Id.* at 624.

Here, there were no sales to Illinois. And none is not one. Therefore, the Court finds that it lacked personal jurisdiction over defendants garnisells, itsyours4keeps, and clothesforangels. Because "[d]efault judgments rendered without personal jurisdiction are void," *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 598 (7th Cir. 2007), the Court vacates judgment and all orders as to defendants garnisells, itsyours4keeps, and clothesforangels.

Motion for Sanctions

The Court denies defendant garnisells' motion for sanctions as untimely. *See Sullivan v. Hunt*, 350 F.3d 664, 666 (7th Cir. 2003) ("Hunt also cannot prevail under Federal Rule of Civil Procedure 11 because his request for sanctions was untimely. It is well

established in this Circuit that 90 days from the date of entry of final judgment represents 'the outer parameters of the timeliness for sanctions claims.'").

The Court also declines to exercise it's inherent authority to sanction the plaintiff. "In order to sanction a party under its inherent power, a court must provide notice of its intention to impose sanctions and give the party an opportunity to respond. Sanctions can then be imposed if the court finds that the party acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 928 (7th Cir. 2004) (citation and quotations omitted).

Here, while the Court is sympathetic to the hardship this case caused to defendants garnisells, itsyours4keeps, and clothesforangels, many of the plaintiff's actions were authorized by the Court. The Court accepted the plaintiff's allegations as true and authorized electronic service of process. The Court accepted the plaintiff's allegations as true and entered preliminary and permanent injunctive relief. Court orders in hand, the Court cannot conclude that the plaintiff acted in bad faith, vexatiously, wantonly, or for oppressive reasons absent a finding that the plaintiff obtained those orders fraudulently.

That does not mean that the Court is not concerned by the plaintiff's conduct. As mentioned above, the plaintiff represented on several occasions, on information and belief, that the defendants sold products in Illinois. But this case involved 228 defendants. It is unclear whether the plaintiff's representations concerned some, as opposed to all, of those defendants. This ambiguity precludes a finding that the plaintiff misled the Court. And it confirms this Court's commitment to consider joinder *sua sponte* in cases such as this.

Perhaps more concerning is the plaintiff's conduct after this Court entered judgment. During argument, defendant garnisells claimed that it did not learn of this lawsuit until April 2025 when third-parties froze his accounts pursuant to this Court's order. (R. 101-1 ¶¶ 6-7.) Why did it take more than a year for those third-parties to freeze this defendant's accounts? Plaintiff's counsel explained it is because the plaintiff sat on the Court's order for more than a year before serving the third-parties with a copy of it. (R. 125 at 8.) According to plaintiff's counsel, "the thinking behind the delay is that the -- since the order is effective four years, the thinking is that the merchants accrue more funds, and because the platforms, even when they are seized during a litigation, the platforms a lot of the times allow for the merchants to continue using their accounts without infringing activity. So the merchants accrue funds, and then at some point there is a seizure. Certainly after the order gets sent in to the platforms the platforms still take their time to effect the order. That is not really within plaintiff's control, but the thinking behind any potential delays is that it allows the merchant to accrue funds to better enable potentially -- well, getting more of course is the crude way to say it, right, but to get closer to the ultimate judgment amount." (*Id.*)

4

The Court subsequently asked whether plaintiff's counsel served a defendant with a copy of the Court's order. (*Id.* at 9.) Plaintiff's counsel said that, while the plaintiff served that defendant with a copy of the motion for default judgment, the plaintiff did not provide that defendant with a copy of the injunction. (*Id.*) That concerns the Court because the plaintiff's filings paint this case as an effort to "combat online counterfeiters who trade upon Plaintiff's commercial reputation and goodwill." (R. 1¶ 1.) The plaintiff's conduct demonstrates that the case is not about stopping the infringing conduct as much as it is about maximizing the plaintiff's recovery. By delaying and allowing the defendants continued infringement, one must question whether the plaintiff failed to police its trademarks.

But again, this is the Court's fault as it did not set a deadline for the plaintiff to serve third-parties with notice. Quite frankly, the Court did not think it had to. The plaintiff must notify any affected party or third-party of this Court's permanent injunction no later than October 24, 2025.

Date: October 22, 2025

JEREMY C. DANIEL
United States District Judge