# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LILY & VAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 26-cv-01896<br><br>Judge Joan H. Lefkow<br><br>Magistrate Judge Jeffrey T. Gilbert |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT NO. 131'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant asks this Court to hold that it can be sued nowhere in the United States. Its Amazon storefront identified its business name as HugBerry LLC and its business address as Denver, Colorado. Vogt Decl. [53-1] ¶ 10, Ex. 2. Its Reply now disclaims any relationship to that company and says any claim touching it "should be filed separately." [56] at 4. It gestures at Colorado and Washington but rejects both and insists that "this Court still lacks jurisdiction" either way. *Id.* at 4–5. Defendant resists availment by refusing to identify a single forum in which it concedes suit could proceed and casting itself as the operator of a mere website, but it did not build a website and wait to be discovered; it paid to occupy space on the most popular e-commerce marketplace in the U.S. precisely for its access to U.S. consumers and for the infrastructure that targets and services them. That is not a jurisdictional defense; it is an attempt to exploit the gap Rule 4(k)(2) was written to close. Moreover, Rule 4(k)(2) provides a safety valve addressing Defendant's claim of "universal jurisdiction" by allowing a defendant to identify where jurisdiction is proper. Defendant has not done so.

## I. Defendant Does Not Merely Operate a Website — It Intentionally Rents Space on Amazon.com Which Is Tailored to Target and Serve U.S. Consumers.

The Reply's controlling authority states that a defendant "may not be 'haled into court simply because the defendant owns or operates a website that is accessible in the forum state.'" [56] at 3 (quoting *Liu v. Monthly*, 170 F.4th 1090, 1094 (7th Cir. 2026)). Yet Defendant does not operate a website of its own. It sells from a storefront on Amazon.com, a United States–facing commercial marketplace, through an Amazon seller account in which Amazon holds the proceeds of its sales. Vogt Decl. [53-1] ¶¶ 3, 8 & Ex. 1. Defendant pays fees to feature its products on Amazon's platform, which is supported by a mobile application installed on hundreds of millions of phones and a well-regarded fulfillment network. *Id.* ¶ 7 & Ex. 1. In essence, Defendant rents space on Amazon's platform, and in doing so leverages the millions of U.S. consumers that platform reaches, its nationwide fulfillment network, and the trust American shoppers place in it.

Defendant's storefront is therefore not merely a website that happens to be visible in this country. Selling on Amazon is a different business model altogether: it is a rented space in an American shopping mall, stocked by a foreign seller who chose the location because Amazon's checkout, tax, and fulfillment are tailored to target American buyers. That is the point of selling on Amazon; an American consumer who has never heard of Garment Print Co. will still buy from it, because they are not relying on Garment Print Co. at all; they are relying on Amazon's reputation, its app, its return policy, its delivery promise, and the security of paying Amazon rather than an unknown foreign entity. Defendant pays Amazon a fee in exchange for Amazon standing behind the purchase. It therefore did not merely reach American consumers through a website; it outsourced its e-commerce infrastructure to Amazon, paid for access to Amazon's U.S. consumer base, and used the credibility it rented to move a product bearing Plaintiff's stolen artwork. That

is a business-model choice, not a sales-channel choice, and a seller who makes it has done a great deal more than "merely operate[] a website." *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011).

The Reply misdescribes its own authorities. It asserts that *NBA Properties* "found jurisdiction only because the defendant 'intentionally ship[ped] an infringing product.'" [56] at 5. The opinion holds otherwise. It rested purposeful direction on the defendant's having "established an online store, using a third-party retailer, Amazon.com," because "[t]hrough this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022). What mattered was "its structuring of its own activities so as to target the Illinois market." *Id.*

The court also refused the strict completed-sale rule Defendant now urges, holding that "[t]alismanic jurisdictional formulas" are not "an acceptable instrument in the toolbox of a court assessing personal jurisdiction," *id.* at 625 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485 (1985)), even recognizing that "there need not be an actual sale to demonstrate trademark infringement; merely listing for sale a product that is likely to cause confusion violates the Lanham Act." *Id.* at 626 n.18. The sale was simply the contact the record happened to present. The court analyzed it because it was there, rejected the defendant's argument that a single transaction could never suffice, and framed the question as one of direction rather than volume: "The question is not whether the plaintiff purchased enough goods to subject the defendant to personal jurisdiction. The focus is whether HANWJH purposefully directed its conduct at Illinois." *Id.* at 624–25. Holding that a sale sufficed is not holding that a sale is required, and nothing in the opinion forecloses jurisdiction resting on the public display of a copyrighted work in violation of the Copyright Act. Under Rule 4(k)(2), the relevant market is the United States, and Defendant structured its storefront and infringing public display of Plaintiff's copyrighted work to reach all of it.

Moreover, the Copyright Act does not require a sale or a transaction; a violation, and therefore a suit, can arise from the infringement of any of the enumerated exclusive rights. *See* 17 U.S.C. §§ 101, 106. Congress made public display an exclusive right of the copyright owner, *id.* § 106(5), and made its violation an act of infringement, *id.* § 501(a), without conditioning either on a completed sale. A sale requirement would read the display right out of the statute and would leave the exclusive right most easily exercised across a border as the one right a foreign infringer may violate with impunity. The Court should decline Defendant's invitation to impose a talismanic sale requirement on a body of law that requires no sale in the first place.

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), does not carry the Reply's weight either because the contacts that decision rejected are not the contacts at issue here. The defendant there operated an interactive website of its own, and the Seventh Circuit held that website interactivity is "a poor proxy for adequate in-state contacts," because "the operation of an interactive website does not show that the *defendant* has formed a contact with the forum state." *Id.* at 803. Defendant here has no website whose interactivity could be measured. The contact Plaintiff identifies is the unauthorized public display of its copyrighted work on a U.S.-facing marketplace Defendant paid to occupy, together with the deliberate choices that put the display there. The Seventh Circuit then held that the inquiry "boils down to this: has [the defendant] purposefully exploited the [forum] market" beyond "simply operating an interactive website accessible in the forum state." *Id.* at 802 (quoting *be2*, 642 F.3d at 558–59). And *Advanced Tactical* identified precisely what would change the answer: evidence of "the deliberate actions by the defendant to target or direct itself toward the forum." *Id.* at 803. Those actions are in this record. Defendant accepted Amazon's U.S. terms and sold through a seller account on Amazon.com, [51-1] ¶ 5; priced in dollars, offered shipment throughout the

United States, including to Illinois, Pennsylvania, and Florida, and left its infringing listing available to every American consumer without geographic restriction, Vogt Decl. [53-1] ¶¶ 7, 13–14 & Exs. 5, 6. Where the relevant forum is the Nation, a seller that declines to withhold its display from any part of it has directed that display at all of it and is amenable to suit in any federal court.

Finally, none of the Reply's authorities is a Rule 4(k)(2) case. *Liu*, *Curry v. Revolution Labs., LLC*, 949 F.3d 385 (7th Cir. 2020), *Advanced Tactical*, *Walden v. Fiore*, 571 U.S. 277 (2014), and *NBA Properties* each proceeded under a state long-arm statute, Rule 4(k)(1)(A), and the Fourteenth Amendment, asking whether a defendant targeted a single State. *Liu* never mentions Rule 4(k)(2) or the Fifth Amendment, and neither does the Reply, which also does not address *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), the decision holding that the Fifth Amendment "necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority," *id.* at 16, and on which Section II of Plaintiff's response rests.

Under Defendant's theory, an infringer could display any number of stolen works to lure American consumers to its storefront to generate profit from the sale of its goods, and still remain beyond the reach of every federal court, so long as no sale closed on the illegally displayed copyrighted works. The artist who properly sought and obtained a U.S. copyright registration would be left powerless to stop the unlawful display while absorbing the resulting loss of licensing opportunities, royalties, and goodwill from the defendant's use of a copyrighted work. On that same reasoning, a copyright owner could not sue even for injunctive relief against an unlawful public display of her work unless and until the infringer happened to close a sale — a requirement found nowhere in the Copyright Act. The Court should decline to graft one on. Defendant purposefully availed itself of the United States by operating a U.S.-facing Amazon storefront that

publicly displayed Plaintiff's copyrighted work, and Plaintiff's claim arises directly from that display, which is a suit-related contact supporting jurisdiction under Rule 4(k)(2).

## II. Defendant Seeks to Be Answerable in No Forum at All, and Rule 4(k)(2) Exists to Close the Gap It Is Trying to Exploit.

Rule 4(k)(2) was introduced to "close[ ] a loophole that existed prior to the 1993 amendments," by which "a non-resident defendant who did not have 'minimum contacts' with any individual state sufficient to support exercise of jurisdiction, but did have sufficient contacts with the United States as a whole, could escape jurisdiction in all fifty states." *In re Stingray IP Sols., LLC*, 56 F.4th 1379, 1384 (Fed. Cir. 2023) (internal citations omitted); *see ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (the Rule "responds to the Supreme Court's suggestion that the rules be extended to cover persons who do not reside in the United States, and have ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction"); Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment. That is precisely the gap Defendant seeks to exploit. The Rule does not ask whether a foreign defendant has done enough business in one particular State; it asks whether the defendant's suit-related conduct, viewed at the national level, supports the exercise of federal judicial power. Given Defendant's lack of a home State and its aggregate suit-related contacts with the U.S. through its public display, this Court may lawfully exercise personal jurisdiction over it.

Under *ISI*, the burden of defeating the Rule is Defendant's: "[a] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there. If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Id.* at 552. Defendant has never carried it. It swore that it "solely operates in Socialist Republic of Vietnam,"

[51-1] ¶ 6; when Plaintiff's counsel asked it on June 24, 2026, to identify a suitable forum pursuant to Rule 4(k)(2), it did not respond, [53] at 11; and its Reply gestures at Colorado and Washington only to disclaim both, insisting that "this Court still lacks jurisdiction" on either premise and that any claim touching HugBerry LLC "should be filed separately," [56] at 4–5. Defendant wants the Court to relieve it of its burden and accept its disclaiming of any and all U.S. forums to continue this suit and its lack of an explanation as to why HugBerry LLC's name and Denver address appeared on its own Amazon storefront, what its relationship to that company is, or who in fact owns and operates the storefront. That is not a naming. It is the refusal *ISI* describes.

The "universal jurisdiction" concern the Reply invokes, [56] at 5, is not what Rule 4(k)(2) produces. *Advanced Tactical* used that phrase to describe a State-multiplying result: sustaining jurisdiction on that record "would mean that a plaintiff could bring suit in literally any state where the defendant shipped at least one item," and "[t]he creation of such *de facto* universal jurisdiction runs counter to the approach the Court has followed since *International Shoe*." 751 F.3d at 801–02. The court was applying Rule 4(k)(1)(A) and Indiana's long-arm statute, *id.* at 800, so the danger it identified was fifty state forums opened by a single shipment. Rule 4(k)(2), by contrast, opens the federal forum on three conditions: a claim arising under federal law, a defendant whose aggregate suit-related contacts with the U.S. as a whole support jurisdiction, and a defendant who "is not subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2)(A). The limiting principle *Advanced Tactical* found missing is built into the Rule's own gateway, and Defendant holds the key. Naming a single State whose courts could hear this case would close Rule 4(k)(2) permanently and confine this litigation to that forum. *ISI Int'l*, 256 F.3d at 552. Defendant has declined to write it. The breadth it complains of is the breadth it chose.

Plaintiff's alternative request for transfer does not forfeit application of the Rule. The Advisory Committee Notes "make clear that Rule 4(k)(2) was not intended to 'affect the operation of federal law[s] providing for the change of venue,' §§ 1404(a), 1406, 1631, but was instead envisioned to work in harmony with those provisions." *Stingray*, 56 F.4th at 1386 (quoting Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment). A plaintiff's willingness to accept transfer is a fallback under statutes designed to operate alongside the Rule. *ISI* explains how the two regimes fit together. When the Rule's conditions are satisfied, jurisdiction lies in the district where the plaintiff filed, including "in the United States District Court for the Northern District of Illinois." *ISI Int'l*, 256 F.3d at 552. *ISI* then addressed transfer directly: "Federal courts . . . transfer venue to district courts in other states expressly, using 28 U.S.C. § 1404(a). When jurisdiction is based on Rule 4(k)(2), however, it is impossible (by definition) to send the litigation to another state." *Id.* at 553. Thus, if Defendant is not amenable to suit in any State as it suggests, Rule 4(k)(2) supplies jurisdiction here, and there is no other forum to which the case could be transferred. If instead the Court concludes that Defendant's consent or its affiliation with HugBerry LLC renders it amenable to suit in Colorado, for example, then Rule 4(k)(2)(A) is not satisfied and 28 U.S.C. §§ 1404(a) and 1631 supply the remedy: transfer, not dismissal. What Defendant may not do, however, is "simply use a 'unilateral statement of consent' to preclude application of Rule 4(k)(2)" and thereby "achieve transfer into a forum it considers more convenient (or less convenient for its opponent)." *Stingray*, 56 F.4th at 1384 (internal citations omitted). Its burden "entails identifying a forum where the plaintiff could have brought suit — a forum where jurisdiction would have been proper at the time of filing." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012). Defendant has offered neither a consent nor a forum.

What Defendant actually asks of this Court is an escape hatch: a finding that it is not at home in Colorado, not bound in Washington, and not amenable here, followed by dismissal rather than transfer, so that it leaves the case altogether. On its rule, it can be sued nowhere in the United States, notwithstanding the United States–facing storefront it operated and the tens of thousands of dollars it drew out of the American market through it. Vogt Decl. [53-1] ¶ 3. The remedy is straightforward. Defendant should be required to identify on the record a suitable alternative forum it would consent to suit. If it does, transfer is available under 28 U.S.C. § 1404(a), which reaches "any district or division to which all parties have consented," and under § 1631. If it will not, then it "refuses to identify any other [state] where suit is possible," and this Court "is entitled to use Rule 4(k)(2)." *ISI Int'l*, 256 F.3d at 552. What Defendant may not do is decline every forum into which it directed its business and be answerable in none.

## III. At a Minimum, the Open Jurisdictional Questions About Defendant's Operation Warrant Limited Jurisdictional Discovery.

At minimum, limited jurisdictional discovery is warranted, because the Reply leaves several jurisdictional questions unanswered. The threshold is modest: such discovery "is proper if a plaintiff establishes a colorable or prima facie showing of personal jurisdiction." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 864 (7th Cir. 2024). Plaintiff has made its prima facie showing through the Vogt Declaration and its exhibits (*see* [53] at 6–8), and the Complaint pleads Rule 4(k)(2) as a basis for jurisdiction. [1] ¶ 2. A pre-suit investigation captures only a snapshot of an online seller at a single moment; the lifetime of the operation lies in Defendant's records. Defendant's Reply supplies the ambiguity that entitles Plaintiff to reach them.

Defendant's Reply never answers what entity actually owns and operates the Garment Print Co. storefront; whether that entity is Mr. Nguyen, HugBerry LLC, "Robin Jones," or someone else; why the account's business identity changed from a Bac Ninh, Vietnam address to a Denver,

Colorado one between August 2025 and July 2026; how many other storefronts or seller accounts the same operator controls; how many listings across them display Plaintiff's works or the works of others; or what the volume and destinations of its United States sales have been. Vogt Decl. [53-1] ¶¶ 10–12 & Exs. 2–4. Mr. Nguyen's declaration says nothing about HugBerry LLC and nothing about Robin Jones; it asserts only that he personally is "the owner of the online store," [51-1] ¶ 3, which is irreconcilable with the business information it listed on its Amazon storefront. *Id.* ¶ 10, Ex. 2. And Defendant has filed no Notification of Affiliates under Local Rule 3.2.

That silence also answers any suggestion that naming the storefront rather than a corporate entity defeats the claim: online storefronts are "not the business itself, but are tools that the business . . . uses to sell its goods," *Hangzhou Chic Intelligent Tech. Co. v. P'ships et al.*, No. 20 C 4806, 2022 WL 1028834, at *1 (N.D. Ill. Apr. 6, 2022), and where the operator has concealed its own identity, the answer is discovery and, if the record warrants it, substitution of the correct party name — not dismissal. *See Skechers U.S.A., Inc. II v. P'ships & Unincorporated Ass'ns*, No. 24-cv-07333, Dkt. 156 (N.D. Ill. Mar. 9, 2026) (granting unopposed motion to substitute the corporation owning and operating the defendant store for the store name). Defendant should not be permitted to convert the gaps in its own disclosure into a reason to end the case.

## CONCLUSION

Rule 4(k)(2) requires suit-related contacts with the United States and a defendant not amenable to suit in any State. Defendant's rented storefront — configured for this market and used to display Plaintiff's registered work to American consumers — supplies the first; its refusal to name any forum supplies the second. The Motion should be denied, or at a minimum held pending limited jurisdictional discovery; and should the Court conclude that jurisdiction is wanting and a suitable alternative forum available, the action should be transferred rather than dismissed.

DATED: August 25, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084/IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on August 25, 2026, with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys and parties of record.

*/s/ Keith A. Vogt*
Keith A. Vogt